IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONTINENTAL MACHINERY COMPANY, INC., | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:19-cv-769-L |
| SCOTT H. KORN d/b/a/BENGAL PAPER AND CONVERTING, | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE AND
ORDER DENYING MOTION TO TRANSFER VENUE**

Defendant Scott Korn has filed motions to dismiss for insufficient service of process, lack of personal jurisdiction, and failure to state a cause of action, and a motion to transfer venue, *see* Dkt. No. 6 (Defendant's Rule 12 Motions), and Plaintiff Continental Machinery Company, Inc. has filed a motion to remand, *see* Dkt. No. 10.

United States District Judge Sam A. Lindsay referred the three motions to dismiss and the motion to remand to the undersigned United States magistrate judge for findings and recommendations, s*ee* Dkt. Nos. 9, 11, and the motion to transfer venue for determination, *see* Dkt. No. 8.

For the following reasons, the undersigned recommends that Defendant's motions to dismiss be denied or, in one instance, deferred for ruling by the state court on remand and that the motion to remand be granted. The undersigned also denies as moot the motion to transfer venue.

## Background

A pipe broke at the Linfield, Pennsylvania facility of Bengal Converting Services, Inc. ("BCS"), causing flooding and damaging equipment. *See* Dkt. No. 5 at 1. Plaintiff Scott Korn – BCS's President, Chairman of the Board of Directors and Chief Executive Officer – submitted an insurance claim for the burst pipe and the insurance company recommended that Defendant Continental Machinery Company, Inc. do the restoration work *See id.* at 2.

Continental's agents presented Korn with a Service Agreement to sign when they arrived to do the work. *See id.* Korn did not read the Agreement carefully before he signed it because "the facility was literally under water" and he wanted the work to begin immediately. *Id.*

The parties to the November 16, 2016 Service Agreement are Continental and Bengal Paper and Converting. *See* Dkt. No. 1-3 at 6. The parties agreed that the "[g]overning law will be that of the State of Texas" and that "[v]enue will be Dallas County Courthouse, Dallas, Texas." *Id.* Korn signed the Service Agreement as the Chairman of Bengal Paper and Converting. *See id.*

Continental was never paid for the work it performed at the BCS facility.

Continental filed a suit on a sworn account in the 162nd Judicial District Court of Dallas County, Texas to collect $346,155.39 plus interest. *See* Dkt. No. 1-3. Continental asserts that Korn, individually, does business as and is the owner of Bengal Paper and Converting. *See id.* at 1. Continental also asserts that the Texas state court

has jurisdiction and venue is proper in Dallas County under the Service Agreement's forum-convenience clause and choice-of-law clause. *See id.* at 1-2.

Korn filed a special appearance in state court, *see* Dkt. No. 1-7, then removed the case to this Court on the basis of diversity jurisdiction, *see* Dkt. No. 1. Continental is a resident of Texas and Nevada, and Korn is a resident of Pennsylvania. *See id.* at 1-2.

Korn contends that, although he signed the Service Agreement as the Chairman of Bengal Paper and Converting, a fictitious company name, he was acting in a representative capacity for the true principal, BCS. Thus, he contends that he cannot be sued in his individual capacity for violation of the Service Agreement.

Korn's three motions to dismiss are based on his contention that he cannot be sued in an individual capacity. He also seeks a forum non conveniens transfer of this case to Pennsylvania. Continental seeks remand on the basis that, by agreeing to the Service Agreement's forum selection clause, Korn waived the right to remove the case to federal court.

The Court may, in its discretion, take up matters of personal jurisdiction before deciding a motion to remand on jurisdictional grounds. *See GESPA Nicaragua, S.A. v. Inabata Europe, GmbH*, EP-19-CV-182-PRM, 2019 WL 7340304, at *6 (W.D. Tex. Dec. 30, 2019). But, here, Continental's ground for remand – while timely raised within 30 days of removal – is not jurisdictional. *See Alvarez v. Standard Guar. Ins. Co.*, Civ. A. No. G-10-560, 2011 WL 13248279, at *2 (S.D. Tex. Apr. 15, 2011), *rep. & rec. adopted*, 2011 WL 13248280 (S.D. Tex. May 9, 2011). And so the Court, in its discretion, may

take up the dismissal motions before analyzing the motion remand.

Under the circumstances here, the undersigned recommends that the Court first address service of process and personal jurisdiction and then turn to whether to remand based on the forum-selection clause.

## Legal Standards and Analysis

I.    <u>The Motion to Dismiss for Insufficient Service of Process should be denied.</u>

The initial service of process on Korn was defective, but Continental properly served Korn after he filed his motion to dismiss for insufficient process. Accordingly, the motion to dismiss for insufficient process should be denied.

Texas Rule of Civil Procedure 106 provides that citation must be delivered to the defendant, in person, or, if authorized by the court, by leaving a copy of the citation with anyone over sixteen years of age at the location specified by the Court. *See* TEX. R. CIV. P. 106. The method of service is the same for a nonresident defendant as it is for a resident. *See* TEX. R. CIV. P. 108.

Continental attempted to serve Korn by delivering a copy of the citation and petition to Dylan O'Donnell, who the process server identified as "Vp-Operations" and "authorized to accept service for Scott H. Korn D/B/A Bengal Paper and Converting" at the BCS facility in Pennsylvania Dkt. No. 1-3. Continental had not sought the court's authorization for substitute service.

After Korn filed his Rule 12 Motions, Continental properly served him. A process server delivered a copy of the citation and petition to Korn personally on April 17, 2019. *See* Dkt. No. 13 at 1.

-4-

II.    The Motion to Dismiss for Lack of Personal Jurisdiction Over Defendant Scott
       <u>Korn, Individually, should be denied.</u>

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If the Court decides the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows, we only consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

The due process component of personal jurisdiction requires two elements: (1) the nonresident must have some minimum contact with the forum such that the he or she could anticipate being haled into the courts of the forum state, and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Due Process Clause ensures that

persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (internal quotation marks omitted). Personal jurisdiction must be assessed on an individual-defendant basis. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

First, to establish minimum contacts with the forum, a non-resident defendant must do some act by which he "purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (internal quotation marks omitted). But the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *See id.* at 474; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Second, in determining whether the exercise of jurisdiction is appropriate, the United States Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's purposeful contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992). Thus, "[i]n determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and 'it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.' " *McFadin*, 587 F.3d at 759-60 (quoting *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ).

Five factors guide a court's analysis of whether exercising personal jurisdiction is fair and reasonable: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

Two types of personal jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *See J.R. Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.' " *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "First, the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id*. at 1122 (emphasis in original) (quoting Burger King, 471 U.S. at 475). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. (citations omitted). Specific jurisdiction is a

"claim-specific inquiry," so a plaintiff must establish specific jurisdiction for each claim asserted. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 343 (5th Cir. Sept.16, 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ).

General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 41-16. The Supreme Court has observed that the proper consideration when determining general jurisdiction is "whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.' " *Daimler AG v. Bauman,* 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (alteration in original). The Supreme Court held that, as to a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id*. at 760. It is, therefore, "incredibly difficult" to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs.*, 768 F.3d at 432. A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting physical presence in the state. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *see also Johnston*, 523 F.3d at 614 (general jurisdiction not conferred simply by advertising within a state or traveling to the state at regular intervals).

Under both specific and general jurisdiction analyses, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.' " *Id*. at 475 (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *See Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992).

Korn contends that the Court lacks personal jurisdiction over him individually for two reasons: (1) he signed the Service Agreement as an agent and not in his individual capacity, and (2) he has not had minimum contacts with the state of Texas and, as a result, the exercise of personal jurisdiction over him would not comport with traditional notions of fair play and substantial justice.

Continental sued Korn in his individual capacity d/b/a Bengal Paper and Converting. *See* Dkt. No. 1-3 at 1. Korn contends that Bengal Paper and Converting is a fictitious name under which BCS does business and that, when he signed the Service Agreement as Chairman of Bengal Paper and Converting, he was doing so as a representative of BCS and not in his individual capacity. *See* Dkt. No. 5. Thus, Korn contends that the Court cannot exercise personal jurisdiction over him individually.

It is undisputed that Bengal Paper and Converting is a fictitious name.

In his Affidavit, Korn identifies himself as "the President and Chairman of the Board of Director of Bengal Converting Services, Inc. (BCS) which has been doing business as Bengal Paper & Converting, a Pennsylvania domestic corporation." *Id.* at ¶ 2. He also states that "the name used on the Service Agreement prepared by Continental was Bengal Paper and Converting which is a fictitious name used by Bengal Converting Services, Inc. in Pennsylvania." *Id.* at ¶3. Korn also describes Bengal Paper and Converting as an assumed name of Bengal Converting Services, Inc. *See id.* at ¶ 4. Korn asserts that he "signed the agreement as Chairman of Bengal Paper & Converting which is a name by which BCS goes by in Pennsylvania." *Id.*

The Pennsylvania Fictitious Names Act requires businesses to register any fictitious names under which they conduct business in Pennsylvania. *See* 54 Pa. C.S.A. § 303(b)(1). Bengal Paper and Converting is not registered as a fictitious name, trade name, or legal name with the Pennsylvania Bureau of Corporations. *See* Dkt. No. 13 at 4-10. But two other companies associated with Korn are registered with the Bureau of Corporations: Bengal Converting, LLC and Bengal Converting Services, Inc. *See id.*

The Service Agreement's choice-of-law clause provides that disputes arising under the agreement are to be governed by Texas law. *See id.* at 3. "Under Texas law, 'it is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the principal, to disclose not only the fact that he is acting in a representative capacity but also the identity of his principal, as the person dealt with

is not bound to inquire whether or not the agent is acting as such for another.'" *Playboy Enterprises, Inc. v. Sanchez-Campuzano*, Civil Action No. M-01-226, 2010 WL 11458755, at *7 (S.D. Tex. Nov. 23 2010) (quoting *Carter v. Walton*, 469 S.W.2d 462, 471 (Tex. Civ. App. – Corpus Christi, writ ref'd n.r.e.) (quoting *Mahoney v. Pitman*, 43 S.W.2d 143, 146 (Tex. Civ. App. – Amarillo, writ ref'd); *see also Sw. Bell Bedia, Inc. v. Trepper*, 784 S.W.2d 68, 71 (Tex. App. – Dallas 1989, no pet.) (quoting same). And the agent must disclose the identity of the true principal, not merely a principal. *See Playboy*, 2010 WL 1148755, at *7; *Sw. Bell Media*, 784 S.W.2d at 72 ("To avoid personal liability, an agent has two duties. He must: (1) disclose his representative capacity, and (2) identify his true principal.") (citing *A to Z Rental Center v. Burris*, 714 S.W.2d 433, 435 (Tex. Civ. App. – Austin 1986, writ ref'd n.r.e.). An agent who executes a contract on behalf of a fictitious principal is personally liable on the contract if he fails to accurately disclose his true principal. *See Playboy*, 2010 WL 1148755, at *7 (quoting *Stacy v. Energy Mgmt. Grp. Ltd., Inc.*, 734 S.W.2d 149, 150 (Tex. App. – Houston [1st Dist.] 1987, no writ).

Here, Korn failed to disclose that he was acting in a representative capacity for the party that he contends is the true principal – BCS – when he executed the Service Agreement on behalf of the fictitious principal – Bengal Paper and Converting. Because Korn failed to disclose the identity of the true principal, he is, under Texas law, personally liable for disputes arising under the Service Agreement.

And Korn's failure to carefully read the Service Agreement before signing does not absolve him from personal liability. *See* Dkt. No. 1-3 at ¶ 4 ("Continental presented

a contract (Service Agreement) for me to sign. I did not really read it carefully since the facility was literally underwater. I signed the agreement that Continental gave me to sign so that the clean-up work would begin immediately."). "It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read or understand it, or that the other contracting party failed to explain it to him." *Gines v. D. R. Horton, Inc.*, 699 F.3d 812, 820-21 (5th Cir. 2012); *see also Ridge National Resources, L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 133 (Tex. App. – El Paso 2018, no pet.) ("A person who signs a contract...must be held to have known and fully comprehended the legal effect of the contract."); *Castroville Airport, Inc. v. City of Castroville*, 974 S.W.2d 207, 211 (Tex. App. – San Antonio 1998, no pet.) ("Contracting parties are obligated to protect themselves by reading what they sign and are presumed, as a matter of law, to know the contract's terms."). Korn is presumed to have read the Service Agreement and understood the legal effect of signing it as the agent of the fictitious corporation without disclosing the identity of the true principal.

Korn also submitted to jurisdiction in Texas under the Service Agreement's forum selection clause, which provides that "[v]enue will be Dallas County Courthouse, Dallas, Texas." Dkt. No. 1-3 at 6; *see XPEL Tech. Corp. v. Maryland Performance Works, Ltd.*, Civil Action No. SA-05-0593-XR, 2006 WL 1851703, at *6 (W.D. Tex. May 19, 2006) ("By accepting the EULA and its Texas forum selection clause, Maryland Performance consented to this court's exercise of personal jurisdiction for suits arising out of the EULA.").

In diversity cases, when the out-of-state defendant has signed a contract agreeing to be sued in a specific venue, federal law applies to determine whether the clause is enforceable. *See Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997); *Alliantgroup, L.P. v. Feingold*, Civil Action No. H-09-0479, 2009 WL 1109093, at *4, 9 (S.D. Tex. April 24, 2009). "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 10 (1972)). The defendant can prove unreasonableness by establishing one of the following: (1) the inclusion of the forum-selection clause into the written contract was the product of fraud or overreaching; (2) the party opposing enforcement of the clause "will for all practical purposes be deprived of his day in court" because of the extreme inconvenience or unfairness of the forum specified in the clause; (3) the law specified in the clause is fundamentally unfair and will cause plaintiff to be deprived of a remedy; or (4) enforcement of the clause would go against a strong public policy of the forum state. *See Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines*, 499 U.S. at 595; *The Bremen*, 407 U.S. at 12-13). The defendant bears a "heavy burden of proof." *Id.* (citing *The Bremen*, 407 U.S. at 17); *see also Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5th Cir.1998) ("The burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the [resisting party] of

-13-

his day in court."). There is a "'strong presumption in favor of forum selection clauses,'" and "'a valid forum selection clause is given controlling weight in all but the most exceptional cases." *Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 513 (5th Cir. 2007) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 (1998) (Stewart, J., concurring)).

Korn has not met his substantial burden of rebutting the presumptive validity of the forum selection clause. Korn does not argue that there was fraud or overreaching by Continental but seems to argue that it would be unreasonable to enforce the forum selection clause under a minimum contacts analysis.

But, by signing the Agreement with a forum selection clause, Korn consented to jurisdiction in Texas or waived the requirements for personal jurisdiction in Texas. *See Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) ("The presence of the [forum selection] clause avoids the need to rely solely on the traditional minimum contacts analysis by providing a second, stronger basis for jurisdiction thereby minimizing the risk that anything more than a frivolous challenge to jurisdiction may arise."); *see also American Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 381 (N.D. Tex. May 2, 1996) (holding that nonresident defendant's consent to a forum selection clause, standing alone, was sufficient to satisfy the traditional notions of fair play and substantial justice).

This Court may exercise personal jurisdiction over Korn, and the Court should deny the Motion to Dismiss for Lack of Personal Jurisdiction over Defendant Scott

-14-

Korn, Individually.

III.    The Motion to Remand should be granted.

Continental seeks remand because Korn waived his right to removal. The undersigned agrees.

A party to a contract may waive its right to remove an action to federal court. *Waters v. Brown-Ferris Indus., Inc.*, 252 F.3d 796, 797 (5th Cir.2001). Specifically, "[a] party may waive its rights by explicitly stating that it is doing so, by allowing the other party to choose venue, or by establishing an exclusive venue within the contract." *City of New Orleans v. Municipal Admin. Servs.*, 376 F.3d 501, 504 (5th Cir. 2004).

The forum selection clause in this case provides that "[v]enue will be Dallas County Courthouse, Dallas, Texas." Dkt. No. 1-3 at 6. The Court may take judicial notice that the federal district courts for the Northern District of Texas are located in the Earl Cabell Federal Building and not the Dallas County Courthouse. *See Blackwell v. Across U.S.A., Inc.*, No. 3:14-cv-3912-L, 2015 WL 1879754, at *3 (N.D. Tex. April 23, 2015).

Accordingly, the undersigned recommends that the motion to remand be granted and that this case be remanded to the 162nd Judicial District Court of Dallas County, Texas.

The Court therefore need not – and should not – address Defendant's motion to dismiss for failure to state a cause of action – which may be addressed by the state court on remand, and the Court DENIES as moot Defendant's motion to transfer venue to another federal district.

-15-

**Recommendation and Order**

The Court should deny Defendant's Motion to Dismiss for Insufficient Service of Process and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction over Defendant, Scott Korn, Individually [Dkt. No. 6 at 4-9] and grant Plaintiff's Opposed Motion to Remand [Dkt. No. 10]. And the Court denies Defendant's Motion to Transfer Venue [Dkt. No. 6 at 11-12].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 16, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE